# THE MARYLAND & WASHINGTON RAILWAY COMPANY
*v.*
# HILLER.

CONSTITUTIONAL LAW ; EMINENT DOMAIN ; CONDEMNATION PROCEEDINGS ; SPECIAL BENEFITS.

1. In proceedings to acquire land for railway purposes by condemnation, special benefits which will result from the construction of the railway to land not taken cannot be set off against the value of the land actually taken, and so much of an act of Congress chartering a railroad company as provides that such benefits shall be taken in consideration in condemnation proceedings to acquire land for railway purposes is unconstitutional and void.
2. The "just compensation" guaranteed to owners of private property taken for public use, by the Fifth Amendment of the Constitution, cannot be paid in "benefits," in whole or in part.

No. 531. Submitted February 19, 1896. Decided April 7, 1896.

HEARING on an appeal from a judgment in condemnation proceedings instituted by the appellant to acquire land for railway purposes. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. John Ridout* for the appellant:

This appeal presents the single question, May special, actual and immediate benefits to the residue of a tract of land, part of which is taken under the exercise of the right of eminent domain, be set off against the value of the part taken. This question is answered affirmatively in many of the States. In Alabama, California, Delaware, Illinois, Indiana, New York, Ohio, Oregon, South Carolina, Connecticut, Kansas, Maine, Minnesota, Massachusetts, New Hampshire. Lewis on Eminent Domain, secs. 469 and 470, and cases cited, among which are: *Trinity College* v. *Hartford*, 32 Conn. 452; *Tosper* v. *Saline County*, 27 Kan. 391; *Railroad Co.* v. *Waldron*, 11 Minn. 515; *Clark* v. *Worcester*, 125 Mass. 557; *Newby* v. *Platt*, 25 Mo. 258; *Daugherty* v. *Brown*, 91 Mo. 26; *Railroad Co.* v. *Burket*, 46 Ala. 569; *Railroad Co.* v. *Caldwell*, 31 Cal. 367; *Whitman* v. *Railroad Co.*, 2 Harr. 514; *State* v. *Evans*, 2 Scam. 208; *Young* v. *Harrison*, 17 Ga. 30.

It is obvious that there can be little Federal authority upon the question, yet the doctrine has been recognized in the late Circuit Court of the District of Columbia. *Ches. and Ohio Canal Co.* v. *Key*, 3 Cranch C. C. 599.

The question is an open one in this court, for in the opinion of this court in *Prospect Hill Cemetery Co.* v. *District of Columbia*, 5 App. D. C. 497, the court carefully distinguished the case before it from one arising under a statute providing for allowance for such benefits, as the act of March 2, 1895, expressly does in section 24.

In a case like the present, the finding of the commissioners that the benefits are actual and immediate, the award not being excepted to by the owners and no motion for a

new trial having been filed by them, is conclusive as to the character and value of the benefits.   If this be so, it is manifestly equitable that they should be deducted in ascertaining the "just compensation" required by the Constitution. Cooley, Const. Lim. (6th ed.) 697 ; Lewis, Em. Domain, sec. 471.

*Mr Samuel Maddox* for the appellees :

The predicate of these conjectural benefits is the supposed enhancement in value of the land not taken.   But it is not every increase in value that can be taken into consideration in fixing benefits.   It must be the direct and special result of the improvement proposed and carried out, such as draining a marsh or bridging a water-course.   Lewis on Eminent Domain, sec. 476.   In this case an attempt is made to charge benefits against value in advance of any work actually done to accomplish that result.

It is not deemed necessary to enter upon an elaborate discussion of the point presented by this appeal, because it has recently been decided against the contention of appellant, both in the Supreme Court and in this court.   *Monongahela Navigation Co.* v. *United States,* 148 U. S. 313 ; *District of Columbia* v. *Prospect Hill Cemetery Co.,* 5 App. D. C. 497.

Mr. Justice SHEPARD delivered the opinion of the Court :

This is an appeal from a judgment in a condemnation proceeding, instituted by the appellant, the Maryland and Washington Railway Company, to procure a right of way for its railroad, in process of construction between Baltimore and Washington, across a tract of land belonging to the appellees.

Proceedings were had in conformity with the practice provided by law, and the commissioners, under direction of the court, assessed, first, the value of the land actually taken at $4,427.80, and, second, the benefit to the land not taken at

$1,500; and found that no damage had been done to the remainder of the tract. The court, in acting upon exceptions to the report, refused to credit the actual value, as assessed, with the amount of the benefits found, and entered judgment for the whole amouut.

The single question presented by the record is this: Can the benefits which the owners may receive through the increased value of the remaining land from the construction of the railroad, be set off against the value of the land actually taken? And its solution depends upon the construction to be given to the last clause of the Fifth Amendment to the Constitution: "Nor shall private property be taken for public use without just compensation."

Congress has not undertaken to construe the act by providing a specific basis for the assessment of the compensation; The only direction contained in the provision for the condemnation of land for railway uses is, that the appraisers "shall consider the injury which such owner may sustain by reason of such railroad, and shall forthwith return their assessment of damages to the clerk of the court, setting forth the value of the property taken, or injury done to the property, which they assess to the owner or owners separately, to be by him filed and recorded." R. S. D. C., sec. 655.

Nor has the Supreme Court of the United States ever undertaken, so far as we can ascertain, to lay down a rule by which the assessment of compensation for property taken for public, or *quasi* public, use may be specifically directed. The farthest it has expressly gone is, to say that there cannot be taken into account, "as an element in the compensation, any supposed benefit that the owner may receive, in common with all, from the public uses to which his private property is appropriated." *Monongahela Navigation Company* v. *United States*, 148 U. S. 312, 326.

In that case, to which we will recur later, the proceeding for condemnation had been instituted on behalf of the United States, in the prosecution of a national work in the interest of commerce. Turning to the decisions of the

highest courts of the several States of the Union, constru-
ing constitutional provisions substantially like that of the
Federal Constitution, which governs here, we find an irre-
concilable conflict of opinion. The cases are too numerous,
and besides it would serve no useful purpose, to undertake
their review. It must be admitted, however, that they pre-
ponderate in favor of the construction that permits special
benefits to the remaining land to be set off against that ac-
tually taken. It is worthy of remark, in this connection,
that in many of those States the rule of the courts has since
been changed by statutory provisions and even constitutional
amendments.

But, notwithstanding the admitted preponderance of au-
thority in support of that doctrine, we cannot give our ad-
hesion to it as proceeding from a correct interpretation of
the meaning of "just compensation," as used in the Consti-
tution. After much consideration, our conviction remains
that the framers of the Constitution had in contemplation
the payment of money, the universal medium of exchange
and measure of values, and of that only, as "just compen-
sation" for property taken for public use.

Just compensation means certain compensation as well,
and that can hardly be predicated of what may be called pay-
ment in benefits that are expected to follow the use and oc
cupation of the condemned land by a private corporation.
Those benefits are, at best, conjectural and incapable of
reasonable, certain calculation. In this one respect, as well
as in others, the expropriation of land for a railway, or
other similar improvement, differs widely from that for the
purpose of opening a highway or street for the necessary
accommodation of the public. In the first case, practically
the exclusive use of the land passes to the private corpora-
tion whose uses are incompatible with the uses of or the
exercise of dominion by others. In the latter, the way re-
mains open as a special easement of the adjoining owner.
He has this special right in the way or street as an incident
to the ownership of the abutting land, as well as the right

of user common to all persons. The subsequent occupation of the street by a steam railroad is generally regarded as such a material change of use, or legal nuisance, as to entitle him to compensation therefor, though no such right accrues to the general public. It is also maintained, upon excellent authority, that the street, when once opened, cannot afterwards be abandoned by the municipal authorities without compensation to the abutting owner for the deprivation of his special easement. Lewis, Em. Domain, sec. 134. And in this again, if correct, he has a right denied to the general public. The private corporation, though in the exercise of franchises for the use and convenience of the public, and thereby invested with the right to condemn property for its use, acts, nevertheless, with a view to private profits only. There is certainly no injustice in requiring it to pay the actual value of that which it obtains. It pays for what it gets, and gets all that it pays for.

There is another consideration. It is said by a learned author that, "as an original question, it seems clear that the proper interpretation of the Constitution requires that the owner should receive his just compensation before entry upon his property. When an individual is ousted from possession under a claim of right, his property is taken from him, and if he has not been paid an equivalent in money, it is taken from him without compensation." Lewis, Em. Domain, sec. 456. The foregoing doctrine is opposed by many decisions, which hold that the occupation may precede the payment provided the latter is reasonably well secured to be made within a reasonable time. We think that interpretation is the true one, however, with a probable exception in the case of the Federal and State governments, in whose favor the certainty of payment from the public revenues is considered, for necessary public convenience, as being the certain equivalent of payment. Now, where the payment, in whole or in part, is made in supposed or estimated future benefits, that rule must necessarily be violated ; for the benefits cannot accrue until after the occupation and

the practical completion and commencement of the operation of the enterprise. Thus, again, we are brought back to the realization of the fact, that, after all, consequential benefits are an uncertain, unsubstantial reliance, and ought not, therefore, to be taken into account as elements of the " just compensation " guaranteed by the Constitution.

The courts, which maintain that benefits should be taken into account against the value of the property actually taken, necessarily hold that the whole of that value, as well as a part only, may thus be paid in benefits. As a consequence, we may see a citizen, who puts his land to uses agreeable to himself, whatever they may be, and deprecates the change that must follow in order to receive the supposed benefits of the imposition, compelled by force to yield his title and possession, and accept payment therefor in a currency with which no other debt or obligation can be discharged under the express limitations of the Constitution.

We have heretofore said that the question here involved has never been decided by the Supreme Court of the United States, and that the nearest approach to it is to be found in *Monongahela Navigation Co.* v. *United States*, 148 U. S. 312. In that case, after adverting to the necessity of " adhering to the rule that constitutional provisions for the security of person and property should be liberally construed," Mr. Justice BREWER, speaking for the court, said : " The language used in the Fifth Amendment, in respect to this matter, is happily chosen. The entire amendment is a series of negations, denials of right or power in the Government, the last, the one in point here, being, ' Nor shall private property be taken for public use without just compensation.' The noun ' compensation,' standing by itself, carries the idea of an equivalent. Thus, we speak of damages by way of compensation, or compensatory damages, as distinguished from punitive or exemplary damages, the former being the equivalent for the injury done, and, the latter imposed by way of punishment. So that if the adjective ' just ' had been omitted, and the provision was simply that

property should not be taken without compensation, the natural import of the language would be that the compensation should be the equivalent of the property. And this is made emphatic by the adjective 'just.' There can, in view of the combination, be no doubt that the compensation must be a full and perfect equivalent for the property taken. And this just compensation, it will be noticed, is for the property and not to the owner. Every other clause in this Fifth Amendment is personal. 'No person shall be held to answsr for a capital or otherwise infamous crime,' etc. Instead of continuing that form of statement, and saying that no person shall be deprived of his property without just compensation, the personal element is left out, and the just 'compensation' is to be full equivalent for the property taken. This excludes the taking into consideration, as an element in the compensation, any supposed benefit that the owner may receive, in common with all, from the public uses to which his private property is appropriated, and leaves it to stand as a declaration that no private property shall be appropriated to public uses unless a full and exact equivalent for it be returned to the owner."

It is true, the learned justice proceeded immediately to say : "We do not in this refer to the case where only a portion of a tract is taken, or express any opinion on the vexed question as to the extent to which the benefits or injuries to the portion not taken may be brought into consideration. This is a question which may arise possibly in the case," etc. In the face of these concluding words we cannot, of course, regard that case as settling the question of interpretation ; but the language that precedes them, and which we have quoted at length, is strongly suggestive and persuasive. The premise, that the "just compensation" required is not "to the owner," as such, but "for the property," leads irresistibly to the conclusion that it can only be met by the payment of the full value of the property, without set-off of benefits to the owner. "Just compensation" to the owner—the person—might include a deduction for

certain benefits which he may receive to other property. Viewing his claim to compensation as one for damages merely, it might be plausibly contended that this means the net result of the act of condemnation, as it effects him pecuniarily.   But as compensation " for the property " taken, no question of damages to the owner enters into consideration.   In the latter view the word damages, as applied to the " just compensation " for the property, is a misnomer, only in so far as the adjacent land, not taken, may be injuriously affected.

We are of the opinion that there was no error in the proceedings on the exceptions taken to the report of the special commissioners, and that the judgment rendered is correct.   It will therefore be *affirmed, with costs to the appellees.*

ALVEY, Chief Justice, concurs in the judgment of affirmance, but not in all the reasoning of the opinion.

On April 21, 1896, *Mr. Ridout,* on behalf of the appellant, filed a motion for reargument.

On May 5, 1896, the motion for a rehearing was overruled, Mr. Justice SHEPARD delivering the opinion of the Court :

In a petition for reargument in this cause, the appellant calls our attention to the erroneous assumption that the condemnation proceedings were had under the provisions regulating condemnation proceedings in the Revised Statutes for the District of Columbia, sections 665, etc.   For the first time, we are now informed that the proceeding was begun and had under the special provisions of the private act of Congress incorporating the appellant, one of which provides the mode in which the damages shall be assessed, and declares that benefits shall be taken into consideration in the assessment of compensation for land actually taken. 28 Statutes U. S. 715, sec. 5.

Conceding that we were bound to take notice of the terms of the private act, which is not perfectly clear, we find nothing therein to justify reargument. The opinion of the majority of the court was not influenced in the slightest degree by the terms of the act as found in the Revised Statutes.

. We were then of the opinion, as expressed since in another case, where the public interest was expressly involved, that under the terms of the Fifth Amendment, Congress has no power to compel the consideration of special benefits to remaining land, as a set-off against the actual value of the part taken. The right to set-off must be limited to damages that may be claimed as resulting to the part that is not taken. *District of Columbia* v. *Armes, post, p.* 393.

The motion is *overruled, with costs.*

The Chief Justice dissents from the conclusion herein.